IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHAWNA KAY D., | ) |
|     Plaintiff, | ) No. 21 C 923 |
| v. | ) Magistrate Judge M. David Weisman |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | ) |
|     Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Shawna Kay D. appeals the Acting Commissioner's decision denying her application for Social Security benefits. For the reasons set forth below, the Court affirms the Acting Commissioner's decision.

### Background

On January 9, 2019, plaintiff applied for benefits, alleging an amended disability onset date of August 31, 2018. (R. 319, 381.) Her application was denied initially, on reconsideration, and after a hearing. (R. 317-29, 392, 409, 423, 437.) Plaintiff appealed to the Appeals Council, which declined review (R. 1-4), leaving the ALJ's decision as the final decision of the Acting Commissioner reviewable by this Court pursuant to 42 U.S.C. § 405(g). *See Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009).

### Discussion

The Court reviews the ALJ's decision deferentially, affirming if it is supported by "[s]ubstantial evidence," *i.e.*, "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gedatus v. Saul*, 994 F.3d 893, 900 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "'[W]hatever the meaning of 'substantial' in other contexts,

the threshold for such evidentiary sufficiency is not high.'" *Id.* (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)).

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The regulations prescribe a five-part sequential test for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a), 416.920. The Acting Commissioner must consider whether: (1) the claimant has performed any substantial gainful activity during the period for which she claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the residual functional capacity ("RFC") to perform her past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. *Id.*; *see Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001).

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged amended disability onset date. (R. 319.) At step two, the ALJ found that plaintiff has the severe impairments of "[g]astrointestinal disorder, cardiomyopathy, anxiety, attention deficit hyperactivity disorder, and depression." (*Id.*) At step three, the ALJ found that plaintiff's impairments did not meet or medically equal a listed impairment. (R. 320.) At step four, the ALJ found that plaintiff is unable to perform her past relevant work but has the RFC to perform light work with certain exceptions. (R. 322-27.) At step five, the ALJ found that jobs exist in significant numbers in the national economy that plaintiff can perform, and thus she is not disabled. (R. 327-29.)

Plaintiff contests the ALJ's conclusion that her health-related absences would not exceed the amount employers generally tolerate, *i.e.*, one to two per month. (ECF 14-1 at 7; R. 374-75 (vocational expert ("VE") testifying that an employee who is "regularly absent two, or more, days a month" will lose their job).) Plaintiff says, "the record shows that [she] was hospitalized or in the ER on average more than 10 to 12 days per year since her alleged onset date." (ECF 14-1 at 7) (emphasis omitted); (*id.* at 10.) She contends, for example, that in 2019, the number of days she spent in an emergency room or hospital exceeded the twelve to twenty-four deemed acceptable by employers. (*Id.* at 10-11.) But the evidence she cites shows that plaintiff lost, at most, eight days to ER visits and hospital stays in 2019.[1] (*Id.*) Because the record does not support plaintiff's assertion that her impairments would cause her to be absent from work excessively, it is not the basis for a remand.

Plaintiff also argues that the ALJ erred by not consulting a medical expert to determine the etiology of her abdominal pain, which she contends is due to postcholecystectomy syndrome. (ECF 14-1 at 12.) First, plaintiff has not offered any authority for the notion that an ALJ must determine the cause of each severe impairment, rather than its effects. Second, plaintiff does not explain how the result of her claim would have been different if the ALJ had attributed her abdominal pain to postcholecystectomy syndrome instead of a gastrointestinal disorder. (*See* R. 319; *see id.* at 322-25 (ALJ characterizing plaintiff's gastrointestinal disorder as a severe impairment and reviewing the medical records related to her abdominal pain in determining the RFC).) Absent that explanation, the ALJ's failure to attribute plaintiff's abdominal pain to postcholecystectomy syndrome does not warrant a remand.

---

[1] It may be that one or more of the documents contained in plaintiff's "*see generally* R. 2229-2449" cite (ECF 14-1 at 11) contains relevant information. But it is plaintiff's responsibility, not that of the Court, to identify the specific pages in the record that support her claim. *Cf. United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) (per curiam) ("Judges are not like pigs, hunting for truffles buried in briefs.").

Next, plaintiff argues that the ALJ erred in assessing the paragraph B function areas. (*See* R. 321 (ALJ finding that plaintiff was mildly limited in understanding, remembering or applying information and concentrating, persisting, and maintaining pace, moderately limited in interacting with others, and had no limitation in adapting and managing herself).) The handful of pages plaintiff cites from the 4,100-page record suggest that she suffers from ADHD, anxiety, and depression, as the ALJ found. (*See* R. 319.) They do not, however, suggest that plaintiff's mental impairments caused moderate or severe limitations in the paragraph B functions over time. (*See* ECF 14-1 at 14) (citing R. 748 (12/11/17 psychiatry record indicating that plaintiff was diagnosed with ADHD and said she was more depressed but also noting that her speech was normal in volume, rate, and intonation, her thought process was linear and goal directed, her thought content was devoid of delusions, and her judgment and insight were fair); R. 909 (5/25/18 emergency room notes, which say nothing about plaintiff's mental state other than that she was "[c]ooperative [and had] appropriate mood & affect"); R. 1432-33, 3974-75 (7/31/18 and 6/15/20 identical psychiatric intakes that say plaintiff was diagnosed with ADHD, she was depressed, anxious, and had difficulty concentrating); R. 3954-58 (7/7/20 psychiatric intake notes stating that plaintiff said she was feeling more depressed, had low energy, poor concentration, and reported transient paranoid ideation, but her doctor said her attention/concentration appeared intact, her appearance was appropriate, her motor activity was normal, affect was within normal limits, she was fully oriented, had no memory impairment, and had coherent and logical thought processes without delusions); R. 3644 (6/22/20 medical record stating that plaintiff became verbally abusive when medical staff refused to give her narcotics); R. 3420 (2/13/20 medical record stating that plaintiff had been very sad lately and cried a lot); R. 3966 (6/15/20 medical record noting that plaintiff cut off her friendships because they were not good for her); R. 1392 (3/14/13 mental health assessment in

4

which plaintiff reports the physical symptoms that stem from her anxiety); R. 608 (plaintiff's function report dated 2/18/19 stating that she does not like change, does not cope well with stress, and "always thought [she] would be murdered"); R. 2101 (notes about an ADHD test plaintiff took on 4/2/16 that said her capacity to attend was in the bottom quartile and she was severely impulsive but noted that the results improved when she was retested two hours later).) Thus, the ALJ's paragraph B findings are not a basis for remand.

Plaintiff also contends that the ALJ's RFC—that plaintiff can perform three-to-four step tasks with no interaction with the public and only occasional interaction with co-workers and supervisors (R. 322)—is not supported by the record. In her view, the ALJ's RFC fails to account for her depression and anxiety, an argument the Court rejects for the reasons discussed above. She also contends that the RFC ignores her concentration difficulties stemming from ADHD. Plaintiff points to test results that showed she had severe hyperactivity and her capacity to attend was in the bottom quartile. The test, however, is dated April 2, 2016, almost 3 years before plaintiff filed her application (R. 2101), and plaintiff has not shown that her ability, or lack thereof, to attend stayed the same over time. Lastly, plaintiff says the RFC should have accounted for the limitations from her migraines. Because, however, plaintiff only offers a few cherrypicked cites to support this argument (*see* ECF 14-1 at 16), the ALJ did not err by refusing to include migraine-related limitations to the RFC.

Plaintiff's final argument is that the ALJ's step five finding, *i.e.*, that there are jobs in significant numbers that plaintiff perform, is faulty. This is so, plaintiff says, because the ALJ relied on testimony of the VE, who in turn relied on SkillTRAN to determine the types and numbers of jobs plaintiff can perform without providing evidence of SkillTRAN's reliability. (ECF 14-1 at 17.) The Court disagrees. "The ALJ is entitled to rely on a VE's testimony unless

5

the claimant objects to it at the hearing." *Albright v. Kijakazi*, No. 1:20-CV-438-JPK, 2022 WL 669897, at *3 (N.D. Ind. Mar. 4, 2022). During the hearing, the VE testified that his testimony was based in part on information he gleaned from SkillTRAN. (R. 378-80.) Plaintiff did not object to the VE's testimony on that basis, question the VE regarding the propriety of his reliance on SkillTRAN, or submit a supplemental brief to the ALJ objecting to the VE's testimony. Having failed to alert the ALJ of her objection before he rendered his decision, her objection is not a basis for a remand.

## Conclusion

For the reasons set forth above, the Court affirms the ALJ's decision, denies plaintiff's motion for summary judgment [14], and terminates this case.

**SO ORDERED.**  ENTERED: June 28, 2022

**M. David Weisman**
**United States Magistrate Judge**